THE GALE MANUFACTURING COMPANY v. ABRAM I.
PHILLIPS.

*Mortgaged chattels—Replevin by mortgagee—Redelivery on payment*
*of mortgage—Costs.*

Plaintiff brought replevin in the circuit court for chattel-mortgaged
    property, and the writ was delivered to a constable, who
    removed the property from defendant's store to a building
    across the street, and, soon afterwards, at the request of the
    plaintiff, made a formal offer of redelivery of the goods to the
    defendant, *where stored,* at the same time tendering him the
    key to the building, which defendant refused to accept, or to
    have anything to do with the goods unless they were returned
    to his store.    Thereupon the constable delivered the key to a
    deputy-sheriff, who took possession of the goods under the writ
    of replevin, which were appraised, and a bond was executed
    and delivered to the officer signed by sureties only, the penalty
    of which was less than the appraised value of the goods, after
    which the goods were delivered to the plaintiff, and were soon
    afterwards advertised for sale by the officer under the mort-
    gage.    On the day fixed for such sale the defendant (mort-
    gagor) paid the full amount due on the mortgage, after which
    the plaintiff's agent tendered to the defendant the possession of
    the goods, *where stored,* which defendant declined to accept.
    Upon an assessment of damages, after a judgment of discontinu-
    ance in the replevin suit, the defendant was awarded the value

of the property, which judgment is set aside with costs of both courts to the plaintiff; the Court holding that the plaintiff came lawfully into possession of the goods under its mortgage, which possession was not made wrongful by the payment of the mortgage, and that, while the defendant had the right, upon such payment, to a redelivery of the mortgaged property, he could not insist upon its being returned to his store by the plaintiff, but must take it where the plaintiff had stored it for safe-keeping.

Error to Berrien.     (O'Hara, J.)     Argued October 25, 1889.  Decided November 15, 1889.

Replevin.  Plaintiff brings error.  Reversed.  The facts are stated in the opinion.

*Edward Bacon,* for appellant, contended :

1. The removal of the goods across the street, from defendant's store, was legal and justifiable by reason of the chattel mortgage; citing *Smith v. Judge,* 53 Mich. 560; and the writ of replevin had nothing to do with such removal, it being retained by plaintiff's agent, and never in the possession of the constable.

2. The payment by the defendant of the mortgage, with all costs, was an unconditional affirmance of the mortgage, and of the plaintiff's proceedings thereunder, and of its rights as mortgagee; citing 2 Greenl. Ev. § 600.

3. There was no replevin of any property if, on October 12, 1888, and before and after that date, it was in the plaintiff's possession in accordance with the provisions of the mortgage; citing *Bacon v. Davis,* 30 Mich. 157; *Hickey v. Hinsdale,* 12 Id. 102; and, if the property was not taken from the defendant's possession, he can have no judgment for its return or value; citing *Douglass v. Garrett,* 6 Wis. 49, and cases cited.

*Clapp & Bridgman,* for defendant, contended:

1. Plaintiff, by the writ of replevin, received defendant's goods from the sheriff and appropriated them.  The writ was plaintiff's; it delivered it to the sheriff; and his return shows that he replevied the goods, and delivered them to the plaintiff.  The constable had the key and the possession of the building, which he turned over to the sheriff.

2. The notice of assessment of damages was sufficient, and the assessment was parcel of a legal judgment against which no

allegation is or could be legally assigned; it concluded the plaintiff; citing *Humphrey v. Bayn,* 45 Mich. 567; and on refusal to assess the damages on discontinuance, *mandamus* lies to compel such assessment; citing *Wheeler v. Wilkins,* 19 Mich. 81; *People v. Tripp,* 15 Id. 518; *Forbes v. Judge,* 23 Id. 497; *LaBarr v. Osborn,* 38 Id. 496.

3. The suit is to be determined upon the situation when the writ issued; citing *Belden v. Laing,* 8 Mich. 500; *Hickey v. Hinsdale,* 12 Id. 99; *Cary v. Hewitt,* 26 Id. 228; *Clark v. West,* 23 Id. 242; *Burt v. Burt,* 41 Id. 82.

LONG, J. This action of replevin was tried in the Berrien circuit court without a jury, and the court made the following findings of fact and conclusions of law:

"Defendant was the owner of a small stock of wood and iron goods in the village of Three Oaks, Berrien county, Michigan; the stock consisting principally of agricultural implements.

"Being indebted to the plaintiff in the sum of $246.99, he executed a chattel mortgage on his 'stock of goods, consisting of road scrapers, plows, spring-tooth harrows, pumps and tubing, binder twine, cultivators (one and two horse), 2 Gale hay-rakes, Gale sulky harrows and seeders, all plow points and plow repairs, stoves, and all shelf goods and grass seed sowers,' to secure the payment of such debt, with interest thereon at 8 per cent. per annum. This mortgage was executed on September 29, 1887, and the debt secured by it was made payable on or before October 1, 1888. About the time it became due, Mr. Gardner, plaintiff's attorney, called upon defendant, and demanded either the payment of the mortgage debt or additional security for the payment thereof; neither of which demands the defendant could comply with. He, however, professed a willingness to satisfy the plaintiff within a reasonable time, but at that time could do no more than to renew the mortgage. Mr. Gardner was not authorized to accept these terms, and so advised defendant; upon which Gardner returned to Albion, headquarters of plaintiff. Mr. Botsford was then sent to Three Oaks by plaintiff, with instructions to sue out a writ of replevin in case of failure to make collection of the debt or to procure additional security for its payment.

"Failing to either collect or to obtain the desired security, Botsford caused a writ of replevin to issue from

this court on October 4, 1888, which writ, and the affidavit thereto annexed, were in due form, and in each of which Abram I. Phillips was designated as defendant and the Gale Manufacturing Company as plaintiff. This writ commanded the sheriff to take into his custody, not only the goods described in the mortgage, but 'all goods, stock, and merchandise in and upon said premises, or elsewhere in said county, belonging to said stock.'

"Botsford had been instructed by the plaintiff to place the writ in the hands of a proper officer for service; but, instead of handing it to the sheriff, he directed a constable of Three Oaks to seize the goods, he (Botsford) retaining the writ in his own possession.

"The constable, under the direction of Botsford, removed all of defendant's stock from the latter's store to a building across the street, owned by one Geminder, and an inventory was made by Botsford of all goods so removed at the time of their removal, viz., October 4 and 5, 1888. The key of the Geminder building was in the possession of the constable; and from the time of their removal the defendant had nothing to do with the possession of such goods, nor had he consented to their removal.

"On October 5, 1888, a loosely-drawn paper was executed by the plaintiff, which purported to be an indemnity bond, running to the constable; the penal sum of which was $200. In this alleged bond reference was made to a chattel mortgage, but in no part of it was reference had to a writ of replevin, or to a suit of any form. Upon learning of Botsford's mistake the plaintiff's attorney immediately wrote to the sheriff of this county, requesting him to go to Three Oaks without delay, and have the constable formally deliver the goods back to the defendant, and then to serve the writ himself. In this letter the attorney advised the sheriff that it was not necessary that the goods should be taken back to defendant's store, but that a formal delivery, as above indicated, would be sufficient for all purposes.

"Acting upon these instructions, Mr. Palmer, a deputy-sheriff of this county, proceeded to Three Oaks on October 12, 1888; saw the constable and Botsford, and, after explaining the situation to them, waited for the constable to make the delivery indicated. Thereupon the constable did offer to the defendant the key of the Geminder building; but defendant refused to take it, or to have

anything to do with the goods unless they were returned to his store. The constable then delivered the key to Mr. Palmer, who took immediate possession of the goods by virtue of the writ of replevin, caused an inventory and appraisal to be duly made, and on the same day, viz., October 12, 1888, a bond was executed and delivered to him, which was intended to be in compliance with section 8324 of Howell's Annotated Statutes. This bond was not signed by the plaintiff, nor any one in its behalf, but was signed by two sureties. In form it was somewhat vague and uncertain, and the penalty named was but $600, while the goods had been appraised at $715.10. This bond is annexed to the return made by the deputy-sheriff, and is on file among the papers in said cause. Mr. Palmer then turned over the possession of the goods to plaintiff, and it has had the possession thereof ever since.

"In making the inventory, Mr. Palmer and the appraisers made some use of the inventory taken by Mr. Botsford; but such was done only to expedite matters, and as a matter of convenience, and no appraisal had been made before that made by the persons duly chosen by the deputy-sheriff. The inventory and appraisal so duly made are annexed to the return of the deputy-sheriff filed in the cause. Sometime after the service of the writ, viz., October 30, 1888, the deputy-sheriff advertised a sale of the goods replevied, to occur on November 5, 1888. On the day set for the sale the defendant paid to plaintiff the full amount of the mortgage debt, together with costs, and also the sum of $12, which had been previously paid by defendant on the mortgage debt, but for which the plaintiff had failed to give credit. On November 5, 1888, and shortly after defendant had paid plaintiff the full amount, as aforesaid, and had been given a receipt therefor, plaintiff's agent, Mr. Hill, tendered the defendant the immediate possession of the goods replevied, as they stood in the Geminder building; but defendant refused to avail himself of such offer.

"The goods have never been sold by plaintiff, nor by any person acting for or under it. At the time of the seizure of defendant's goods, several articles were taken by the plaintiff which were not covered by the mortgage and were not owned by the defendant. On these goods, which had been taken by the defendant to sell on commission, the latter had paid freightage and cartage,

amounting to $10. The plaintiff has satisfied the claims of the actual owners of these goods for such unlawful seizure and detention in most instances, but the defendant has not been reimbursed for the freightage and cartage indicated. At the time of the seizure by plaintiff, namely, October 4, 1888, the defendant could have bought in the wholesale market goods equally as good as these taken from him for $570, which amount includes freightage, cartage, and other expenses incident to the purchase and transportation of goods bought at wholesale. If the goods taken from him had been new, and in perfect condition, they would have been reasonably worth $1,000 in the Three Oaks market at the time of seizure. As it was, they were reasonably worth $746.90, and such amount could have been realized within a reasonable time, and at an expense not to exceed $80. In fixing these amounts, I have not estimated the value of the Superior Drill Company's goods, nor of those owned by the Deering and McCormick people; it appearing evident that such three firms have been paid by the plaintiff for all losses sustained, and that their goods have been returned to them by the plaintiff. All other goods replevied have been considered in arriving at the values aforesaid; and, after taking out the Superior Drill, McCormick, and Deering goods aforesaid, the balance of the goods replevied were reasonably worth $746.90, as aforesaid.

" From the foregoing facts, I find as follows:

" The seizure by Botsford and the constable was a seizure by the plaintiff.

" The goods were replevied by plaintiff, and the bond executed and delivered to the deputy-sheriff was sufficient for the purposes of the proceeding. The use of an attachment form, and the recitals as to an attachment in the return of the sheriff, bearing upon oath and proceedings of appraisers, do not invalidate the proceeding. The appraisers were sworn in the replevin suit, and in no other; and it sufficiently appears so from the record. It was the duty of the sheriff to have returned the goods to the defendant upon failure of the plaintiff to execute a sufficient bond within 24 hours after seizure; but his failure to do so cannot release the plaintiff in this proceeding. The defendant is entitled to the value of the property taken (except the Deering, Superior Drill, and McCormick goods, aforesaid), notwithstanding the action

of the sheriff, not making return to defendant within 24 hours.

"The defendant is entitled to recover $746.90; but, under all the circumstances of the case, there will be no allowance made for interest, nor for anything in the nature of punitive damages; nor will there be any allowance for any moneys ever paid by defendant to plaintiff.

"The defendant is entitled to the further sum of $10 for freightage and cartage on commission goods, but no allowance is made for income prospective, or other commissions.

"The plaintiff had the right to settle with other firms and individuals whose goods were taken at the time it seized defendant's stock, namely, the Superior Drill, McCormick, and Deering people.

"The defendant is not liable for any rental paid to Geminder.

"Let judgment be entered in favor of the defendant, and against the plaintiff, in the sum of $756.90, and costs of this proceeding.

"At the commencement of this suit, the plaintiff had a valid cause of action against the defendant."

Judgment was entered in favor of defendant for the value of the property at $746.90, and $10 damages, and costs. Plaintiff brings error. No part of the evidence is returned.

We are not called upon to consider the case, further than to determine whether the court was in error in its conclusions of law based upon these findings. From these findings, only one question is presented which we need consider.

It appears that after the defendant paid the mortgage plaintiff tendered the goods back, and the defendant refused to accept them. Under such circumstances the defendant, upon an assessment of damages, had no right to a judgment for the value of the property taken, nor for a return. The plaintiff came lawfully into possession under its mortgage, and by paying the mortgage the defendant cannot turn the plaintiff's possession of the

goods into a wrongful holding, so that he may have judgment for costs. It was and is the defendant's right to have his goods back after paying his mortgage, but he could not insist upon their being returned to his store by the plaintiff. He must take them at the place where the plaintiff had stored them for safe-keeping.

The judgment of the court below must be reversed, and set aside. Plaintiff will recover costs of both courts; but from such costs, when taxed, defendant will be permitted to set off the $10 found his due by the court below.

The other Justices concurred.